IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
JANICE McCARTER, on behalf of      )
herself and all others similarly   )
situated,                          )
                                   )
         Plaintiff,                )
                                   )
     v.                            )    No. 13 C 3909
                                   )
KOVITZ SHIFRIN NESBIT, an Illinois )
professional corporation,          )
                                   )
         Defendant.                )
```

**MEMORANDUM OPINION**

Before the court are the plaintiff's: (1) motion for partial class certification; (2) motion to strike; (3) motions for findings of relatedness; and (4) motion to withdraw her motion to add an additional plaintiff. For the following reasons, the court: (1) grants the plaintiff's motion for partial certification; (2) denies her motion to strike; (3) grants her motions for findings of relatedness; and (4) grants her motion to withdraw her motion to add an additional plaintiff.

**BACKGROUND**

This is a putative class action suit against a law firm, Kovitz Shifrin Nesbit ("Kovitz"), for allegedly violating the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq. The plaintiff, Janice McCarter, alleges that Kovitz sent her two debt-collection letters demanding past-due condominium

assessments owed to the Malibu East Condominium Association (the "Condo Association"). In Count I, McCarter alleges that the payment demand in the first paragraph below "overshadows" the FDCPA-required validation notice in the second paragraph:

> THIS IS YOUR <u>NOTICE</u> THAT PAYMENT IN FULL OF THE AMOUNT STATED ABOVE IS DEMANDED OF YOU, AND THAT UNLESS YOUR PAYMENT OF THE FULL AMOUNT IS MADE IN CERTIFIED FUNDS (CASHIER'S CHECK OR MONEY ORDER) <u>ON OR BEFORE THE EXPIRATION OF THIRTY (30) DAYS AFTER THE DATE OF MAILING OF THIS NOTICE</u>, THE ASSOCIATION MAY COMMENCE AN ACTION AGAINST YOU UNDER ARTICLE IX OF THE ILLINOIS CODE OF CIVIL PROCEDURE GOVERNING FORCIBLE ENTRY AND DETAINER SEEKING AN ORDER OF POSSESSION OF THE PREMISES AND WHICH MAY RESULT IN A MONETARY JUDGMENT BEING ENTERED AGAINST YOU. . . . ONLY FULL PAYMENT OF ALL AMOUNTS DEMANDED IN THIS NOTICE WILL INVALIDATE THE DEMAND, UNLESS THE PERSON CLAIMING POSSESSION, OR HIS OR HER AGENT OR ATTORNEY, AGREES IN WRITING TO WITHDRAW THE DEMAND IN EXCHANGE FOR RECEIVING PARTIAL PAYMENT.
>
> <u>FEDERAL LAW GIVES YOU THIRTY DAYS AFTER YOU RECEIVE THIS LETTER TO DISPUTE THE VALIDITY OF THE DEBT OR ANY PART OF IT</u>. IF YOU DON'T DISPUTE IT WITHIN THAT PERIOD, I'LL ASSUME THAT IT'S VALID. IF YOU DO DISPUTE IT BY NOTIFYING ME IN WRITING TO THAT EFFECT I WILL, AS REQUIRED BY LAW, OBTAIN AND MAIL TO YOU PROOF OF THE DEBT. AND IF, WITHIN THE SAME PERIOD, YOU REQUEST IN WRITING THE NAME AND ADDRESS OF YOUR ORIGINAL CREDITOR, IF THE ORIGINAL CREDITOR IS DIFFERENT FROM THE CURRENT CREDITOR, I WILL FURNISH YOU WITH THAT INFORMATION TOO. IF YOU REQUEST PROOF OF THE DEBT OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY-DAY PERIOD THAT BEGINS WITH YOUR RECEIPT OF THIS DEMAND, THE LAW REQUIRES ME TO SUSPEND MY EFFORTS (THROUGH LITIGATION OR OTHERWISE) TO COLLECT THE DEBT UNTIL I MAIL THE REQUESTED INFORMATION TO YOU. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

("30 Day Notice and Demand," dated Dec. 3, 2012, attached as Ex. A to Am. Compl. (capitalization in original; underlining added).)

The court has held that McCarter's allegations with respect to the December 3, 2012 letter state a claim against Kovitz under 15 U.S.C. § 1692g. See McCarter v. Kovitz Shifrin Nesbit, 6 F.Supp.3d 797, 802 (N.D. Ill. 2013) ("[P]ayment is demanded 'on or before the expiration of thirty (30) days after the date of *mailing*' of the notice (emphasis added), when the thirty-day federal validation period runs from receipt of the notice, and there is no explanation of how those periods of time fit together."); see also 15 U.S.C. § 1692g(b) (Collection activities and communications during the thirty-day period "may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." ). McCarter also alleges that she received a second letter from Kovitz, dated January 17, 2013, which improperly failed to "state, identify, or itemize all the charges adding up to the amount demanded in [the letter]." (See Am. Compl. ¶ 41.) The amended complaint alleges two separate classes, defined in relevant part below:

> Class A:
>
> All persons [who], within twelve months prior to the date of filing of this action, resided in Illinois and received (1) a form collection letter similar to Plaintiff's collection letter dated December 3, 2012 and (2) those persons whose collection letters were sent but were not returned by the postal service as undelivered or undeliverable . . . .
>
> Class B:

> All persons [who], within twelve months prior to the date of filing of this action, resided in Illinois and received (1) a form collection letter similar to Plaintiff's collection letter dated January 17, 2013 demanding payment without identifying the itemized charges and (2) those persons whose collection letters were sent but were not returned by the postal service as undelivered or undeliverable. . . .

(Id. at ¶ 13.) McCarter's motion for "partial" certification asks the court to certify Class A, only. (See Mot. for Partial Class Cert. as to Count I, dated Mar. 14, 2014, Dkt. 61.)

Kovitz argues that the court should deny class certification because McCarter and her attorneys will not adequately represent the class's interests. Among other things, Kovitz contends that one of McCarter's attorneys, Mark Lavery, is affiliated with a law firm that the Illinois Attorney General charged with misconduct. McCarter has moved to strike this argument as "scandalous." (See Mot. to Strike Scandalous Matter, dated Apr. 24, 2014, Dkt. 75.) After the parties fully briefed the class-certification motion and the motion to strike, McCarter filed: (1) a motion to add Krystyna Scehura as an additional class representative, (see Mot. to Add Pl. and Proposed Class Rep., dated Sept. 30, 2014, Dkt. 84); and (2) a motion for a finding that Lill v. Kovitz Shifrin Nesbit, 14-cv-2647 (N.D. Ill.) (Wood, J.) is related to this case and should be reassigned to this court, (see Mot. to Relate Cases, dated Sept. 30, 2014, Dkt. 86)). Shortly after filing these motions, McCarter's attorneys filed a separate lawsuit on Scehura's behalf.

See Scehura v. Kovitz Shifrin Nesbit, P.C., Case No. 14-cv-8838 (N.D. Ill.) (Dow, J.). McCarter has moved to withdraw her motion to add Scehura as a plaintiff, and instead seeks a finding that Scehura — like Lill — is related to this case and should be reassigned. (See Combined Mot. to Withdraw and to Relate the Scheura Action to this Case, dated Nov. 5, 2014, Dkt. 93.)[1]

## DISCUSSION

### I. McCarter's Motion for Class Certification

McCarter has the burden to establish that the putative class action satisfies the following elements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If McCarter satisfies these prerequisites, she must also establish that the proposed class satisfies one of Rule 23(b)'s criteria. See Fed. R. Civ. P. 23(b). In this case, McCarter argues that the proposed class satisfies Rule 23(b)(3):

A class action may be maintained if Rule 23(a) is satisfied and if:

[. . .]

---

[1]/ McCarter later filed a separate motion for a finding that Scehura is related to this case. (See Mot. for Relatedness, dated Nov. 19, 2014, Dkt. 99.)

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); (see also Pl.'s Mot. for Partial Class Cert. at 8-9.).

**A. "Class A"**

**1. Rule 23(a)(1): Numerosity**

Kovitz concedes that the individuals who fall within Class A's definition are so numerous that it would be impracticable to join them in one lawsuit. (See Kovitz's Opp'n. at 10.)

**2. Rule 23(a)(2): Common Questions of Law or Fact**

"Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 756 (7th Cir. 2014). Kovitz effectively concedes that the letter that it sent to McCarter on December 3, 2012 is a form

letter.  If the court finds that the letter violates the FDCPA, then that finding will apply to all Illinois residents who received the same letter during the class period.  Thus, there is a question of law common to the entire class.

### 3. Rule 23(a)(3): Typicality

The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." <u>Muro v. Target Corp.</u>, 580 F.3d 485, 492 (7th Cir. 2009) (citation and internal quotation marks omitted).  Kovitz argues that McCarter's claim is atypical because it has "arguable defense[s] peculiar to McCarter:" (1) she only "skimmed" Kovitz's December 3, 2012 letter; and (2) she went on the internet and obtained a form validation demand after receiving the letter, suggesting that she understood her rights. (<u>See</u> Kovitz's Opp'n. at 2-3, 8.)  These facts do not support even an arguable defense to McCarter's FDCPA claims.  "Claims brought under the [FDCPA] are evaluated under the objective 'unsophisticated consumer' standard." <u>Gruber v. Creditors' Protection Service, Inc.</u>, 742 F.3d 271, 273 (7th Cir. 2014).  Thus, it is irrelevant whether McCarter understood, or even read, the letter. <u>See</u> <u>Bartlett v. Heibl</u>, 128 F.3d 497, 501 (7th Cir. 1997) ("[T]he question whether a dunning letter violates the Fair Debt Collection Practices Act does not require evidence that the recipient was confused — or even, as we

noted earlier, whether he read the letter . . . ."). The same alleged deficiencies in Kovitz's form letter will underlie each class-member's claim, including McCarter's. The court concludes that her claim is typical of the claims of the class.

### 4. Rule 23(a)(4): Adequacy of Representation

#### a. *Whether McCarter Will Adequately Represent the Class*

Kovitz argues that McCarter cannot adequately represent the class because: (1) she has a "poor memory;" (2) she was reluctant to divulge information that she deemed personal during her deposition; and (3) she did not disclose that one of her attorneys in this case, Kenneth DucDuong, represented her in a lawsuit that she filed against the Condo Association. (See Kovitz's Opp'n at 2-4, 8-9.) According to Kovitz, the following testimony supports its argument that McCarter's "poor memory" will impair her ability to represent the class:

> Q. At any time have you been treated for drug or alcohol abuse?
>
> A. No.
>
> Q. Do you have any reason to believe that you have any trouble with your memory?
>
> A. I'm older [McCarter is 66 years old]. That's . . .
>
> Q. Is that a yes?
>
> A. Yes.

(See McCarter Dep, attached as Group Ex. A to Def.'s Resp., at 29.) Kovitz also cites McCarter's testimony that she could not recall exactly when she retained Mr. DucDuong to represent her in this lawsuit. (See id. at 60.) These trivial admissions do not undermine McCarter's adequacy as a class representative. As Kovitz points out, McCarter did object to divulging certain information during her deposition that she considered too "personal." On the whole, though, the portions of the transcript that Kovitz has cited do not support the inference that McCarter was evasive. (See, e.g., id. at 20-21 (declining to state her birth date, but stating her age); id. at 30 (declining to state the name of her current business, but describing the nature of the business); id. at 39 (initially declining to identify the name of her former employer, but then answering the question after prodding from counsel).) Nor does the transcript indicate that McCarter is reluctant to participate in the class-action process. (See id. at 113 ("Q. Why did you agree to be a class representative? A. I felt that it was my duty to represent the class if there was something done wrong, as we noted, so — so that this would not happen to others.").)

Kovitz relies heavily on McCarter's failure to disclose during her deposition that Mr. DucDuong filed a lawsuit on her behalf against the Condo Association in November 2013. "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible

evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 728 (7th Cir. 2011) (citation and internal quotation marks omitted). McCarter's omission does not rise to that level. Kovitz's attorney asked McCarter whether Mr. DucDuong represented her in other lawsuits. She stated that he represented her in the Condo Association's lawsuit against her, but did not disclose her lawsuit against the Condo Association. (See McCarter Dep. at 70; see also id. at 86 (testifying that she has been a party in several lawsuits, without identifying her suit against the Condo Association).) Kovitz suggests that McCarter deliberately omitted this information because she "had already filed a motion for default in that matter and was quietly setting it up for default, with a default judgment indeed entered on March 14, 2014, about which the [Condo Association] only recently learned." (Kovitz's Opp'n. at 3-4.) This argument is a stretch. As far as the record reveals, she properly served the Condo Association's registered agent. (See id. at 4.) The court concludes that McCarter will adequately serve the class's interests.

    *b. Whether Plaintiff's Counsel Will Adequately Represent the Class*

Mr. Lavery has significant experience litigating class actions. (See Lavery Decl., attached as Ex. B to Mot. to Cert., ¶ 9 (stating that he has litigated "several dozen class actions," and citing representative cases).)[2] Nevertheless, Kovitz argues that McCarter's attorneys are inadequate because: (1) Mr. Lavery's law firm is related to a law firm that the Illinois Attorney General sued for taking advantage of consumers; and (2) neither Mr. Lavery nor Mr. DucDuong has malpractice insurance. (See Kovitz's Opp'n. at 5, 9-10.) Mr. Lavery is an attorney with Hyslip & Taylor, LLC, L.P.A., the "assumed name" of a limited liability company called Lifetime Debt Solutions, LLC. (Id. at 5; LLC File Detail Report, attached as Ex. J to Kovitz's Opp'n.) In its response to McCarter's class-certification motion, Kovitz asserts, on information and belief, that Lifetime Debt Solutions, LLC "is the successor, or otherwise a reincarnation, of 'Legal Helpers Debt Resolution, LLC'" ("Legal Helpers"). (Kovitz's Opp'n. at 5.) It then cites a newspaper article reporting that the Illinois Attorney General sued Legal Helpers for circumventing restrictions on charging up-front fees for "debt settlement." (See Ameet Sachdev, <u>Chicago Law: Debt-settlement firm to wind down business</u>, Chicago Trib., July 27, 2012, attached as Ex. L to Kovitz's Opp'n.) In its

---

[2] Mr. DucDuong's class-action experience is limited. (See DucDuong Decl., attached as Ex. A to Mot. to Cert., ¶ 4.) Presumably, that is why he associated with Mr. Lavery before filing McCarter's class-certification motion.

response to McCarter's motion to strike these accusations, Kovitz appears to abandon its argument that Hyslip & Taylor, LLC is the "reincarnation" of Legal Helpers. Instead, Kovitz argues that one of Mr. Lavery's colleagues at the firm — Jeffrey Hyslip — was (or is) affiliated with Legal Helpers. (See Kovitz's Resp. to Mot. to Strike at 2.) Kovitz further states that it did not intend to impugn Mr. Lavery's ethics. (Id.) Rather, it meant to underscore the risk of counsel's failure to maintain malpractice insurance. (Id.)

Kovitz's theory is pure speculation. Kovitz asserts that Hyslip & Taylor <u>may</u> have legal troubles in the future because one of its attorneys was affiliated with a law firm that had legal troubles in the past. <u>If</u> Hyslip & Taylor is required to pay a judgment or settlement on these hypothetical claims, according to Kovitz, it <u>could</u> impact the counsel's ability "to represent and protect the class's interests." (See id. at 4.) This speculation is insufficient to deny class certification. With respect to Kovitz's broader point about maintaining malpractice insurance, it has not cited any case law supporting its argument that this is an important consideration in class-action cases. Instead, it relies on an 8-year old article from The Madison-St. Clair Record about another law firm. (See Jesse Ammerman, <u>Class action masters Freed & Weiss don't carry malpractice insurance</u>, The Madison-St. Clair Record, Dec. 22, 2006, attached as Ex. 1 to Kovitz's Resp. to Mot.

to Strike.)  The author's discussion about the importance of malpractice insurance in class-action cases does not provide a basis to find counsel here inadequate.  The court concludes that Mr. DucDuong and Mr. Lavery will adequately represent the class.

       *c.  McCarter's Motion to Strike "Scandalous Matter"*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  McCarter contends that Kovitz's argument about counsel's lack of malpractice insurance was a pretext for implying Mr. Lavery's guilt by association with Legal Helpers. Kovitz clarified in its response to McCarter's motion to strike that it did not intend to impugn Mr. Lavery's ethics.  (See Def.'s Resp. to Mot. to Strike at 2.)  Considering the record as a whole, the court concludes that Kovitz's argument is not "scandalous." The court denies McCarter's motion to strike.

    **6.  Rule 23(b)**

The proposed class satisfies Rule 23(b)(3).  The central question in this lawsuit as it pertains to Class A is whether language in Kovitz's form letter "overshadows" the FDCPA-required validation notice.  Besides purported defenses that the court already has rejected, see *supra*, Kovitz has not identified any other issue that will uniquely impact particular class members. The court concludes that common issues will predominate over any questions affecting only individual class members.  Finally, this

is a run-of-the-mill FDCPA case. Most class members likely will be entitled only to statutory damages. Few individuals would have the incentive file a lawsuit to recover such a small amount of money. See Crawford v. Equifax Payment Services, Inc., 201 F.3d 877, 880 (7th Cir. 2000) (Because FDCPA lawsuits "are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). Here, a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B. "Class B"**

McCarter has not moved to certify Class B. In a footnote to her motion to certify Class A, McCarter states that Class B "is a subclass of Class A. As such, should this Court grant Plaintiff her motion to class A in this Motion [sic], it is not necessary to certify Class B." (See Pl.'s Mot. for Cert. at 1, n.1.) Rule 23(c)(5) states that, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). Courts applying Rule 23(c)(5) have required plaintiffs to satisfy Rules 23(a) and (b) as to any subclass. See 1 McLaughlin on Class Actions § 4:45 (11th ed.) (collecting cases); 7AA Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1790 (3d ed.).[3] Kovitz asserts

---

[3] The court has not found any recent Seventh Circuit authority directly addressing this issue. The court, however, interpreted an earlier version of Rule 23(c)(5) to require plaintiffs to establish the prerequisites for class

that it has not stipulated that members of *Class B* are sufficiently numerous to support a class action, and McCarter does not argue otherwise. Indeed, except for the just-cited footnote, McCarter does not discuss Class B at all. Accordingly, the court denies any request to certify Class B.

**II. McCarter's Motions to Reassign**

McCarter has moved for a finding that <u>Lill</u> and <u>Scheura</u> are related to this case and for reassignment.[4] <u>See</u> N.D. Ill. L.R. 40.4. Two or more civil cases are "related" if they "involve some of the same issues of fact or law." <u>See</u> N.D. Ill. L.R. 40.4(a)(2). Kovitz argues that the plaintiffs' claims are unrelated because they involve different debts, and Kovitz sent letters to them at different times. (<u>See</u> Kovitz's Resp. to Pl.'s Mot. to Relate (<u>Scehura</u>) at 4.) The relevant question is whether the alleged violations are similar, and in this case they are: the plaintiffs in <u>McCarter</u>, <u>Lill</u>, and <u>Scheura</u> challenge the same form letter. (<u>See</u> First Am. Compl., <u>Lill</u>, 14-cv-2647, Dkt. 16, ¶¶ 24-29 (Count I); Compl., <u>Scehura</u>, Case No. 1:14-cv-8838, Dkt. 1, ¶¶ 19-25 (Count I).) The cases also allege overlapping classes. (<u>Compare</u> Am.

---

certification as to any subclass. <u>See</u> <u>In re General Motors Corp. Engine Interchange Litigation</u>, 594 F.2d 1106, 1129 fn. 38 (7th Cir. 1979) (Subclasses must "independently meet the requirements of Rule 23 for the maintenance of the class action."); <u>see also</u> <u>In re Nanophase Technologies Corp. Litigation</u>, Nos. 98 C 3450, 98 C 7447, 1999 WL 965468, *1 (N.D. Ill. Sept. 30, 1999) (same).

[4]/ In light of counsel's decision to file a separate lawsuit on Scheura's behalf, the court grants McCarter's motion to withdraw her motion to add Scheura as a plaintiff in this case.

Compl. ¶ 13 ("Class A"), with Am. Compl., Lill, Case No. 14-cv-2647, Dkt. 16, ¶ 29), and Compl., Scehura, Case No. 14-cv-8838, Dkt. 1, ¶ 13); see also N.D. Ill. L.R. 40.4(a)(4) (two or more class action suits may be related if "one or more of the classes involved in the cases is or are the same").  The court finds that the Lill and Scehura are related to this case.

The cases also satisfy Local Rule 40.4(b)'s conditions for reassigning related cases.  All three cases are pending in the Northern District of Illinois.  See N.D. Ill. L.R. 40.4(b)(1).  It would be more efficient for one judge to oversee the issues common to all three lawsuits: class certification, class notice and administration, and liability with respect to the form debt-collection letter.  See N.D. Ill. L.R. 40.4(b)(2).  Although discovery has progressed further in this case than it has in Lill and Scheura, the parties can bring those cases up to speed without substantially delaying this case.  See N.D. Ill. L.R. 40.4(b)(3) (the court will not reassign the earlier-filed case if it has "progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case *substantially*.") (emphasis added).  Kovitz has stipulated to numerosity as it applies to Class A, (see *supra*), a stipulation that logically applies to the classes alleged in Lill and Scehura. If Kovitz intends to challenge the plaintiffs' adequacy as class representatives, the court can set short dates for their

depositions.  Likewise, Kovitz's pending motions to dismiss in <u>Lill</u> and <u>Scehura</u> will not substantially delay this case.  The motions will be fully briefed before the end of January, and they track some of the arguments that this court has already considered and rejected.  (<u>See</u> Mot. to Dismiss, <u>Scehura</u>, Case No. 14-cv-8838, Dkt. 13, at 4; Mot. to Dismiss, <u>Lill</u>, 14-cv-2647, Dkt. 23, at 2-5.) Finally, the plaintiff in <u>Lill</u> alleges a claim against Kovitz based upon its collection attempts after sending the initial debt-collection letter.  (<u>See</u> First Am. Compl., Dkt. 16, <u>Lill</u>, 14-cv-2647, ¶¶ 30-62 (Count II).)  Kovitz has not identified any obstacle to adjudicating that claim in the same proceeding as the parties' other claims.  <u>See</u> L.R. 40.4(b)(3).

## **CONCLUSION**

For the foregoing reasons, the court: (1) grants the plaintiff's motion for partial certification [61]; (2) denies the plaintiff's motion to strike [75]; (3) grants her motions for findings that <u>Lill v. Kovitz Shifrin Nesbit</u>, Case No. 14-cv-2647 (N.D. Ill.) and <u>Scehura v. Kovitz Shifrin Nesbit, P.C.</u>, Case No. 14-cv-8838 (N.D. Ill.) are related to this case [86 and 99]; and

(4) grants her motion to withdraw her motion to add an additional plaintiff [93]. McCarter's motion to add Scehura as an additional plaintiff [84] is withdrawn.

DATE: January 5, 2015

ENTER: _____
Amy St. Eve, United States District Judge